## Dehoney, et al. v. Rowland.

(Decided February 9, 1926.)

Appeal from Jefferson· Circuit Court
(Common Pleas, First Division).

Brokers—Defendant Held to have Burden of Showing Plaintiffs'
Representation that he was Acting for Purchaser.—In suit for
broker's commission, where plaintiff showed without contradiction
that he was in· real estate business, that written instrument con-
taining agreement to pay commission was delivered to him by
defendants, and that he was sole cause of consummating sale,
burden was on defendants to show that plaintiff represented that
he was acting as agent for purchasing party.

GARNETT & VAN WINKLE for appellants. ·

D. MOXLEY for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Af-
firming.

W. H. Rowland is a regularly licensed real estate
broker in the city of Louisville. He is also a member of
the board of deacons and a trustee of the Crescent Hill
Baptist church in that city. The church desired to con-
struct a Sunday school plant in connection with its audi-
torium and required an additional lot for that purpose. It
owned a lot known as the "Kennedy Home" a short dis-
tance away, but this was not suitable. Mrs. Lillie W.
Dehoney owned a residence and lot adjoining the church
site which she and her husband occupied as a residence.
In the fall of 1923, Rowland negotiated an exchange of
those lots, the basis of this being a writing dated Septem-
ber 29, 1923, addressed to the trustees of the Crescent Hill
Baptist church and signed by Mr. and Mrs. Dehoney in
which they proposed to accept $15,000.00 for their prop-
erty; to be paid $5,500.00 in cash and by a conveyance of a
fee simple unencumbered title to the Kennedy home, both
properties being properly described. It also contained
the following provision: "I will pay the regular commis-
sion prescribed by the real estate board of Louisville."
This proposition was duly accepted by the church trus-
tees and ratified by the church on the 30th of September
and shortly afterward carried into effect by the payment
of the cash consideration and an exchange of deeds.
After the acceptance of the proposition Rowland de-

manded the usual broker's commissions admittedly amounting to $600.00. Payment was declined and he filed this action based on the writing above mentioned, alleging that the provision quoted *supra* was inserted for his benefit. This was traversed and a jury trial resulted in a verdict and judgment for plaintiff. Defendant appeals, the principal ground urged for reversal being error in instructions, and to test the propriety of these a recitation of the facts is necessary.

Prior to these transactions the parties were strangers. Plaintiff testifies that early one morning about the middle of August he and his son called on a Mr. Cardwell, who lived next door to Mr. Dehoney, to inform him of a sale he had made of the Cardwell home. No one answered the door bell and Mr. Dehoney, who was in his front yard, told him that Mr. Cardwell was not at home. Witness expressed regret and mentioned his mission. Defendant asked him if he could not sell his, Dehoney's, property. Witness asked him his price and he declined to make a price without it being seen and told him to come over and look it through, which he and his son did. He gave Mr. Dehoney his business card, reading "Rowland Realty Co., Realtors, 422 W. Liberty, presented by W. H. Rowland." He told Mr. Dehoney that he thought he could sell the property to the Crescent Hill Baptist church, of which he was a member, and asked his price. Mr. Dehoney declined to give it. A few days afterward he and his son called again, at which time Mrs. Rowland was present and substantially the same conversation was repeated, and in which they fixed the price of $15,-000.00 on the property or an exchange for the Kennedy home and $5,500.00. Shortly afterwards Mr. Dehoney called on him at his office. Witness had prepared two written propositions for the Dehoneys to sign, these two being addressed to him. Mr. Dehoney told him that he wanted his banker to examine them before signing and went to consult him. On the following morning he called again at the Dehoney home. Mr. Dehoney had a new proposition prepared similar to those that he had drawn, except the latter paper was addressed to the trustees of the church. He requested them to sign this; they did so and gave it to him. In the meantime he had reported his action to the church which had wanted the property for some time. He did not act with the trustees in the matter but informed them that he could sell the property to the church for Dehoney. The trustees ac-

cepted the proposition and the church approved it. As to these various transactions he is corroborated by his son and by the trustees of the church.

On the other hand, defendants testify positively that neither of them knew that plaintiff was in the real estate business; that Mrs. Dehoney was not present at the first conversation; as to it Mr. Dehoney testifies that after ringing Mr. Caldwell's door bell, Mr. Rowland asked him about Mr. Cardwell and stated that he was sorry that he missed him, that "we want to acquire that property." Witness responded, "It is a nice piece of property and I know he wants to sell it." Rowland asked how he would like to swap for the Cardwell property and he told him he could not do that as he had much nicer property; that Rowland expressed a desire to see his property and he showed him through it; that Rowland never mentioned his business nor said anything at all about the Baptist church wanting the property. Some time later Rowland returned. Mrs. Dehoney met him and called the witness and they had a conversation in the parlor. Rowland asked him if he wanted to sell the house and he told him no. Rowland then told him, "I want to put our cards on top of the table; the Baptist church wants this property." Witness then told him that if it was for the benefit of the public service he would sell it, but would make no price on it until he had consulted his real estate adviser, John Monahan. Rowland then explained to him about the church owning the Kennedy home and that they might give him a trade or sell that property outright to him; that at the time Rowland explained that he was one of the deacons of the Baptist church and that they wanted to acquire the property, but at no time in any of the conversations did he mention the fact that he was a real estate agent or suggest that he would represent him in the transfer or expect any commission. He did not visit Rowland's office until after the deal had been consummated and denies the conversation that Rowland relates as having occurred there. Rowland never offered any written proposition for him to sign; that after the second conversation mentioned above he did call on Mr. Monahan who drew the written proposition filed in suit; that the day after this was drawn Mr. Rowland came to his home and he and Mrs. Dehoney signed that proposition and gave it to him; that it was never intimated by anyone that he was listing his property with Rowland or was expecting to pay com-

missions thereon. The proposition was drawn on a printed form and he knew nothing at all of the provision quoted above in reference to paying commissions. Mrs. Dehoney corroborated her husband as to everything that took place in her presence.

On the trial the court placed the burden of proof upon the plaintiff and gave him the closing argument, but instructed the jury thus:

(1) "Lillie W. Dehoney and R. W. Dehoney signed a proposition for the sale of their property to the trustees of the Crescent Hill Baptist church and delivered it to Mr. Rowland. In that proposition signed by them was the clause, 'I will pay the regular commission prescribed by the real estate board of Louisville.'

"You will find for the plaintiff, Rowland, unless you find for the defendant under the second instruction or the third instruction.

(2) "If you believe from the evidence that Rowland did not represent to Mr. and Mrs. Dehoney that he was in that particular transaction, acting as a general real estate agent on their behalf, but that he did represent himself as acting as a deacon in the Crescent Hill Baptist church and that it was not agreed between the parties that the Dehoneys would pay him a real estate commission in that particular transaction, then you should find for the defendants.

(3) "If you believe from the evidence that Rowland was acting in this transaction not as a real estate agent dealing for himself but as a deacon of the church to which the property was sold, then you should find for the defendants."

As stated the court placed the burden of proof on the plaintiff and gave him the closing argument. In the first instruction, however, a verdict was directed in his favor unless the jury believed as set out in the other instructions in which the burden was placed on defendants; and it is insisted that this shifted the burden and was therefore erroneous. While there is some plausibility in this argument, it is more apparent than real. There is no plea of fraud or mistake in the execution or procuration of the written instrument which contains an unqualified agreement to pay a regular commission, though it does not name the agent to whom payment is due. It is therefore evident that plaintiff assumed the burden

of proving that this provision was intended for his bene-
fit. This burden did not shift during the progress of the
trial, but it was fully met when he showed without con-
tradiction that he was engaged in the real estate busi-
ness, that the written instrument was delivered to him
by defendants and that he was the sole cause of bringing
the parties together and of consummating the sale. It
thus appears that as to this question there was an issue
in the pleadings but not in the evidence, and on this proof
he was entitled to a peremptory instruction in his favor
except for the contention of defendants that he repre-
sented to them that in that transaction he was not acting
as a real estate agent but as a deacon in the Baptist
church, without the expectation of a commission from
them. This defense was in avoidance of the written in-
strument and the burden was upon defendants to sustain
it, and they were not relieved of this burden by reason of
the fact that the other matters mentioned were proven
without contradiction. It follows that the court did not
err in the instructions given.

Wherefore, perceiving no error, the judgment is
affirmed.